UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| CITIZENS CONCERNED ABOUT DISABILITY ACCESS, INC., a Florida not-for-profit corporation; | ) ) ) ) Case No. 00-6234-CIV-GRAHAM/TURNOFF |
| Plaintiff, | ) ) CIVIL DIVISION ) |
| v. | ) PLAINTIFFS' MEMORANDUM IN ) OPPOSITION TO DEFENDANTS RICHARD |
| RICHARD G. ELIE; ATLANTIC THERAPEUTICS, INC.; DR. CLIFFORD J. SHAPIRO, D.C., P.A. d/b/a ATLANTIC CHIROPRACTIC CENTER, | ) G. ELIE, ATLANTIC THERAPEUTICS AND ) CLIFFORD J. SHAPIRO, D.C., P.A.'S ) MOTION TO DISMISS OR MOTION FOR ) MORE DEFINITE STATEMENT ) ) |
| Defendants. | ) ) ) |

## I. INTRODUCTION

In this action under the Americans with Disabilities Act, plaintiff seeks an injunction requiring defendants to remove architectural barriers to access which adversely affect plaintiff's members from enjoying full access to defendants' place of public accommodation. The plaintiff Citizens Concerned About Disability Access, Inc. is an organization whose members include individuals with disabilities as defined by the ADA.

Defendants have filed a motion to dismiss, or in the alternative for a more definite statement, asserting numerous arguments. Plaintiff would respectfully argue that defendants' arguments are without merit for the reasons set forth below.

1

## II. ARGUMENT

### A. Plaintiff Need Not Identify in the Complaint the Name or Names of the Specific Members of Plaintiff's Organization Who Have Been Denied Access.

Defendants' first argument[1] is that the *Complaint* fails to state a claim upon which relief can be granted because the *Complaint* does not set forth the names of individual members of plaintiff's organization who have been discriminated against. Defendants are correct in stating that in order to establish standing to bring a claim in its representative capacity, an association must allege three conditions: (i) its members suffered an actual injury for which they would otherwise have standing to sue in their own right; (ii) the interests the association seeks to protect are germane to its purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); Pennell v. City of San Jose, 485 U.S. 1, 7(1988); Doe v. Stincer, 175 F.3d 879 (11th Cir. 1999).

However, defendants are incorrect in stating that the names of individual members who have been discriminated against must be itemized in a complaint. Rather, an association only has to allege that at least one of its members suffered an injury or threatened injury.[2] See, Schweiker v. Gray Panthers, 453 U.S. 34, 40 at n.8 (1981); Doe v. Stincer, 175 F.3d 879 (11th Cir. 1999); Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp., 801 F. Supp. 684, 691 (S.D. Fla.1992).

In Doe v. Stincer, 175 F.3d 879 (11th Cir. 1999), the Eleventh Circuit Court of Appeals noted

---

[1] Found at ¶ 1(a) on page 1 of *Defendants Richard G. Elie, Atlantic Therapeutics and Clifford J. Shapiro, D.C., P.A.'s Motion to Dismiss or Motion for More Definite Statement.*

[2] Title III of the ADA creates the legal right to nondiscrimination, which by definition in the statute includes a failure to remove architectural barriers. 42 U.S.C. § 12182(b)(2)(A)(a). It is the non removal of barriers to access, i.e., the discrimination, which is the injury complained of in the present action.

that it is not necessary for an association to name the members on whose behalf suit is brought. See also, Church of Scientology v. Cazares, 638 F.2d 1272, 1279 (5th Cir.1981). "Moreover, under Article III's established doctrines of representational standing, we have never held that a party suing as a representative must specifically name the individual on whose behalf the suit is brought and we decline to create such a requirement." Id.; see also, Congress of Racial Equality v. Douglas, 318 F.2d 95, 102 (5th Cir.1963) (upholding right of civil rights organization to assert the constitutional rights of its members despite the fact that pleadings did not seek relief on behalf of any specific member). The court emphasized that it is enough for the representative entity to allege that one of its members or constituents has suffered an injury or threatened injury that would allow it to bring suit in its own right.

**B.    The Complaint Need Not State With More Specificity the "Dates Upon Which the Discrimination Occurred."**

Defendants' second argument[3] is that the *Complaint* fails to state a claim upon which relief can be granted because the *Complaint* purportedly does not set forth the dates upon which the discrimination occurred. This argument is specious. Rather, the *Complaint* clearly indicates that the defendants – through the date of the filing of the *Complaint* – have not eliminated access barriers to their places of public accommodation. This is the discrimination of which is complained in the *Complaint*, and it continues to the present time. The complaint further alleges that the discrimination is continuing and will continue until such time as defendants have complied with the ADA. See, e.g., *Complaint*, ¶ 44.

---

[3]Found at ¶ 1(b) on page 1 of *Defendants Richard G. Elie, Atlantic Therapeutics and Clifford J. Shapiro, D.C., P.A.'s Motion to Dismiss or Motion for More Definite Statement.*

3

### C. The Complaint Need Not State With More Specificity the "Reasons Why Such an Individual or Individuals Would Have Been Denied Access."

Defendant's third argument[4] is that the *Complaint* fails to state a claim upon which relief can be granted because the *Complaint* purportedly does not set forth the "reasons why such individual or individuals would have been denied access." Unfortunately, defendants fail to explain what they mean by this assertion and do not brief the issue in their memorandum of law.

The "reason" is that defendants have failed to remove barriers to access. The *Complaint* reiterates throughout that plaintiff has members who are disabled and who have had their access to defendants' facilities impeded due to defendants' Title III violations.

### D. The Complaint Is Not Unduly Vague and Ambiguous.

Defendant's fourth argument[5] is that the *Complaint* is so vague and ambiguous that defendants cannot reasonably be required to frame a responsive pleading. Plaintiff would respectfully disagree. The Complaint puts defendants on clear notice that plaintiff claims that their facilities violate Title III of the ADA because those facilities have architectural barriers to access which are prohibited by Title III of the ADA.

    1.    *The Pleading Requirements of the Federal Rules of Civil Procedure.*

The general parameters of notice pleading are well established. Dismissal under Rule 12(b)(6) is appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

---

[4] Found at ¶ 1(c) on page 1 of *Defendants Richard G. Elie, Atlantic Therapeutics and Clifford J. Shapiro, D.C., P.A.'s Motion to Dismiss or Motion for More Definite Statement.*

[5] Found at ¶ 2 on page 2 of *Defendants Richard G. Elie, Atlantic Therapeutics and Clifford J. Shapiro, D.C., P.A.'s Motion to Dismiss or Motion for More Definite Statement* and in § D on pages 9 - 10 of defendants' memorandum of law.

(1957). Rule 8 of the Federal Rules of Civil Procedure does not require a detailed recitation of all the facts which may be at issue in the case, but only short and plain statement of claim that will give defendant fair notice of what plaintiff's claim is and grounds upon which it rests. "In ruling on a motion to dismiss, . . . [a] complaint is to be construed in the light most favorable to the plaintiff." Conley, 355 U.S. at 45; Scheuer v. Rhodes, 416 U.S. 232 (1974). The express terms of Rule 8 of the Federal Rules of Civil Procedure do not require a party to set out in minute detail the facts upon which he bases his claim, but require only a short and plain statement of claim that will give defendant fair notice of what plaintiff's claim is and grounds upon which it rests. The Supreme Court explained Rule 8 in Conley v Gibson , 355 U.S. 41 (1957), as follows:

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 303 U.S. 197.

355 U.S. at 47-48.

2.  *The Allegations in the Instant Complaint..*

The defendants acknowledge that the *Complaint* asserts that defendants have violated the ADA, and specifically that they have violated Title III of that statute by not providing handicap parking spaces and accessible routes into the entrances to their places of public accommodation as required by that statute. First, plaintiff would respectfully suggest that – since defendants have ascertained this from reading the *Complaint* in its present form – the *Complaint* in its present form is obviously not too vague to have put defendants on notice as to what is being claimed.

Moreover, defendants' sole argument that the *Complaint* does not meet the requirements of Fed. R. Civ. P. 8 is defendants' assertion that the complaint does not "identify" the "parking facility" at issue or the "shortest possible route" leading to the entrances.[6] This argument of defendants is specious. The parking lot, of course, is the parking lot owned and/or operated by defendants which is adjacent to the businesses of defendants. What other parking lot could the plaintiff be referring to other than defendants' parking lot?

As to the "shortest possible route," what defendants mean by saying it should be "identified" is unclear. Indeed, because defendants do not have proper handicap parking spaces, there is by definition no accessible route leading from the nonexistent spaces to any entrance ways.

---

[6] See, page 10 of defendants' memorandum of law.

E. **The Fact That the City of Pompano Beach Allows Parking on Atlantic Boulevard (To the South of Defendants' Businesses) Does Not Provide Defendants with a Defense to Not Providing Handicap Parking in Their Parking Lot (Which Is Not on Atlantic Boulevard).**

Defendants' argument about "identifying" the parking lot is related, apparently, to defendants' assertion[7] that "there is no evidence that plaintiff investigated its claim prior to filing this lawsuit" because there is street parking available on Atlantic Boulevard, a right of way "jointly maintained by the City of Pompano Beach, Florida and The Florida Department of Transportation (D.O.T.)."

This assertion of defendants is pointless and not germane. Plaintiff makes no allegation whatsoever in the *Complaint* that defendants are obligated to alter Atlantic Boulevard or to ask the City or the D.O.T. to alter Atlantic Boulevard. All plaintiff alleges is that defendants must provide handicap parking in their parking lot and an accessible route therefrom into the places of public accommodation owned, operated, leased or leased to by defendants.

Morever, to the extent that defendants are arguing that, because public parking facilities which are off defendants' premises do not provide handicap parking spaces or wheelchair access to the sidewalk, the defendants' are under no obligation themselves to comply with the ADA, plaintiff would simply state that defendants are wrong. The ADA provides that a place of public accommodation must make readily achievable modifications to its property to remove architectural barriers. 42 U.S.C. § 12182. In the instant matter, defendants' parking lot must be modified to comply with the ADA irrespective of what the City of Pompano Beach or the D.O.T. may do with Atlantic Boulevard.

---

[7]In § E on page 11 of defendants' memorandum of law.

F.  **Defendants, in Their Memorandum, Make Several Factual Representations Which Are Incorrect; and the Conclusions Defendants Imply Are Incorrect.**

Defendants make several factual assertions which are outside of the pleadings. Many of the assertions are incorrect, and for this reason alone, plaintiff believes a response is appropriate. Additionally, because defendants make these assertions in the context of a motion to dismiss, plaintiff must assume that defendants are arguing that the facts asserted warrant dismissal of this action. For this reason also, plaintiff is compelled to respond.

1.  *The Formation of Citizens Concerned About Disability Access, Inc.*

The defendants begin their memorandum of law[8] by making various factual assertions about the formation of Citizens Concerned about Disability Access, Inc. Defendants are correct that Citizens Concerned about Disability Access, Inc. is a non-profit Florida corporation which was formed with one of its purposes being to represent its members' interests by assuring that places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities. Defendants are correct in asserting that Grisell Martinez was one of the principal incorporators and that Jenelle Martinez, Grisell's daughter, is disabled and confined to a wheelchair.

Defendants are incorrect, however, in asserting that Jenelle is not a member of Citizens Concerned about Disability Access, Inc. Defendants are also incorrect in their assertion that "[i]n every instance . . . Janele (sic) Martinez is painted as the 'victim.'" In point of fact, Citizens Concerned about Disability Access, Inc. has numerous members; and in numerous of the lawsuits brought by the organization on behalf of those members, the individual member or members who

---

[8]See, § A on pages 1 - 2 of defendants memorandum of law.

were denied access to a place of public accommodation were a member or members other than Jenelle.

Additionally, defendants are incorrect in asserting that Citizens Concerned about Disability Access, Inc. "was principally created by an attorney named Robert A. Bogdan." Rather, Mr. Bogdan was not an incorporator of the corporation, nor is he an officer, shareholder, or employee of the corporation. He is merely an attorney representing the corporation[9] and has been designated by the corporation as its registered agent for service of process. Finally, defendant notes that Mr. Bogdan is a neighbor of the Martinez family.

It is unclear why defendants posit these matters, and defendants do not cite any legal authority as to why these allegations are relevant to their motion to dismiss. However, to the extent that defendants are arguing that these allegations warrant dismissal of the action, plaintiffs would strongly argue that defendants' position is legally incorrect. It is not unlawful for a mother of a disabled child to form a non-profit corporation. Nor is it difficult even to understand why a mother of a disabled child might wish to be involved with an organization interested in assuring that places of public accommodation are accessible to and usable by the disabled and that disabled persons such as her daughter are not discriminated against because of their disabilities. The fact that Grisel Martinez is not in a wheelchair herself has no bearing on her right to be involved in the organization, nor does it destroy the organization's standing to pursue Title III litigation on behalf of its disabled members.

Nor is there anything improper about the circumstance that an organization asks an attorney

---

[9]Note: Mr. Bogdan is not counsel of record for plaintiff in the present action, although he has represented plaintiff in other actions.

9

who is a neighbor of one of the principal incorporators to represent it. To the extent that defendants are arguing that Mr. Bogdan's being a neighbor of the Martinez family makes the corporation a nullity or deprives it of standing, plaintiff would state that it knows of no legal authority for such a proposition.

2.   *Other Title III ADA Litigation By Citizens Concerned About Disability Access, Inc.*

The defendants next[10] aver that Citizens Concerned about Disability Access, Inc. has been the plaintiff in other Title III litigation. Defendants state that in each suit a "boiler-plate" complaint and summons are filed and financial discovery requests are propounded.[11] Next defendants note that in these various actions filed by Citizens Concerned about Disability Access, Inc., only two attorneys have represented the corporation.

Again, it is unclear why defendants posit these matters, and defendants do not cite any legal authority as to why these allegations are relevant to their motion to dismiss. However, to the extent that defendants are arguing that these allegations warrant dismissal of the action, plaintiffs would strongly argue that defendants' position is legally incorrect. First, to the extent that defendants are arguing that use of "boiler-plate" complaints and summons is improper, they cite no authority for that proposition. Indeed, it is common practice for attorneys to make use of forms (such as form AO 440 issued by the district courts for summons) and to make use of prior work product when drafting new documents (such as when drafting a pleading with similar legal foundations as the new

---

[10] At § B on page 2 of their memorandum of law.

[11] The complaints have not all been identical. Rather, each complaint has been tailored to the specific facts relating to the particular places of public accommodation involved and the particular access issues for each. Defendants are also incorrect in their assertion that financial discovery has been propounded in every case Citizens Concerned about Disability Access, Inc. has filed.

pleading). This does not preclude the plaintiff from having standing as suggested by defendants.

Nor does the fact that plaintiff has sued other places of public accommodation for violations of the ADA preclude this action. That other places of public accommodation have failed to comply with Title III of the ADA is not a valid defense. To the extent, however, that defendants are decrying the fact that there are other places of public accommodation besides themselves who have refused to voluntarily comply with the law even after being put on notice and asked to do so by Citizens Concerned about Disability Access, Inc. (as was done in the present case well prior to litigation being filed) so that plaintiff is compelled to file litigation to compel compliance with the law, plaintiff would undoubtedly agree.

### G. Plaintiff Has Standing.

With respect to Article III standing, it is appropriate to note that plaintiffs' burden at the pleading (and motion to dismiss) stage of litigation is judged by the notice pleading standard set forth in Fed. R. Civ. P. 8. C.f., Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)(support for standing at the successive stages of the litigation is considered in the same way as any other matter on which the plaintiff bears the burden of proof). Thus, the only issue is whether the *Complaint* – when construed in the light most favorable to the plaintiff – alleges short and plain statements asserting the minimal requisites of standing.

When considering a motion to dismiss, the court must view the allegations made in the complaint in the light most favorable to the plaintiff and assume the allegations in the complaint are true. See, Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). In order to prevail on its motion to dismiss, defendant must demonstrate that plaintiff can prove no set of facts consistent with the pleadings which would entitle

plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).[12]

We begin with the basic and well established requirements for organizational/representational standing. In order to establish standing to bring a claim in their representative capacity, an association must allege three conditions: (i) its members suffered an actual injury for which they would otherwise have standing to sue in their own right; (ii) the interests the association seeks to protect are germane to its purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); Pennell v. City of San Jose, 485 U.S. 1, 7(1988); Doe v. Stincer, 175 F.3d 879 (11th Cir. 1999).[13]

---

[12] See, Lujan, 504 U.S. at 561 (general factual allegations of injury resulting from the defendant's conduct can suffice to establish standing because "for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim"). Similarly, the court in Center for Auto Safety v. National Highway Traffic Safety Administration, 253 U.S. App. D.C. 336; 793 F.2d 1322, 1330 (D.C. Cir. 1986), held: "As an initial matter, it should be noted that the petitioners did not supply a detailed basis for their members' standing in their petition for review in this court. However, . . . there is no strict pleading requirement for allegations of standing; neither Rule 15 nor Rule 28 of the Federal Rules of Appellate Procedure require strict pleadings of injury."

[13] The legislative history of the ADA clearly indicates that associations may bring ADA claims on behalf of disabled individuals. "The term 'person' is used in the enforcement section to make it clear that organizations representing individuals with disabilities shall have standing to sue under the ADA." Staff of House Comm. on Education and Labor, 101st Cong., 2d Sess., Report on The Americans With Disabilities Act 489 (Comm. Print 1990); H.R. Rep. No. 485, 101st Cong., 2nd Sess., 49 (1990), reprinted in 1990 U.S.C.C.A.N. 445.

### 1.    *Prong 1 – Actual Injury by Members of CCADA*

First, an association only has to allege that at least one of its members suffered an injury or threatened injury.[14] See, Schweiker v. Gray Panthers, 453 U.S. 34, 40 at n.8 (1981); Doe v. Stincer, 175 F.3d 879 (11th Cir. 1999); Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp., 801 F. Supp. 684, 691 (S.D. Fla.1992). This means that for this Court to have jurisdiction over plaintiff Citizens Concerned About Disability Access, Inc's ("CCADA") claims, CCADA must have asserted in the complaint (1) that at least one of its members have suffered some actual or threatened injury[15]; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 597 (1992); Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343-344 (1977). Plaintiff has done this.

As noted above, it is not necessary for an association to name the members on whose behalf suit is brought, and in the present *Complaint*, plaintiff has not done so. It is not that plaintiff will not due so at the appropriate juncture, but simply because at the pleading stage of the litigation it is unnecessary. If defendants wish to conduct discovery and question individual members of plaintiff's organization about their attempts and desire to access the places of public accommodation, they are free to do so.

---

[14]As noted *supra*, Title III of the ADA creates the legal right to nondiscrimination, which by definition in the statute includes a failure to remove architectural barriers. 42 U.S.C. § 12182(b)(2)(A)(a). It is the non removal of barriers to access, i.e., the discrimination, which is the injury or threatened injury complained of by plaintiffs in the present action.

[15]Moreover, a litigant may allege only future injury and the fact that harm or injury may occur in the future is not fatal to a claim of standing. Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979); Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923); Harrington v. Bush, 180 U.S. App. D.C. 45, 553 F.2d 190, 208 (D.C. Cir. 1977).

In the present case, plaintiff Citizens Concerned About Disability Access, Inc. has alleged in the *Complaint* facts satisfying the first Hunt prong, i.e., that at least one of its members suffered an injury or threatened injury. In ¶ 22 of the *Complaint* plaintiff avers that its members have suffered injury. In ¶ 25 of the *Complaint* plaintiff avers that it has members who have tried to access or would try to access and utilize defendants' place of public accommodation but have been denied access. In ¶ 26 of the *Complaint* plaintiff avers that it has members who intend to access defendant place of public accommodation in the future if the barriers to access are corrected. In ¶ 44 of the *Complaint* plaintiff avers that disabled members of plaintiff's organization have visited and intend to visit defendants' place of public accommodation with the intent of patronizing said establishment but have been impeded from doing so due to defendants' failure to remove architectural barriers to access as required by the ADA. Additionally, in ¶¶ 43, 45, and 46 of the *Complaint* plaintiff avers specifically as to Grisell and Jenelle Martinez[16] and makes it clear that Jenelle has been injured

---

[16]Defendants have correctly surmised the identity of the two members of plaintiff's organization who are referenced in ¶¶ 43, 45, and 46 of the *Complaint*. Their names are not mentioned in the *Complaint*; thus, defendants apparently surmised their identities from some other source. Of course, since the *Complaint* does not name either of these individuals, there is no specific allegation in the *Complaint* that they are members of Citizens Concerned About Disability Access, Inc. Why defendant makes the false statement that Jenelle in not a member is unclear. As noted *supra*, however, defendants have mistakenly assumed that Jenelle is not a member and that her access has not been impeded. It is also important to note that, although ¶¶ 43, 45, and 46 of the *Complaint* do relate to these two individuals, ¶¶ 22, 25, 26, and 44's reference to other "members" includes other persons in addition to the Martinez's; and defendants' assumption to the contrary is an incorrect assumption. In fact, defendants' jumping to the conclusion that the reference to "other members" in ¶44 and to "members" in ¶¶ 22, 25 and 26, means only Grisell Martinez is not even logical. "Members" is plural, and it cannot logically mean only Grisell – especially where it is not only in the plural but also made in addition to "this member". Logically, if "this member" is Grisell, and there are "other members" (plural), then defendants should have been able to figure out that the reference to other members had to be to persons other than Grisell and Jenelle.

because she is impeded in utilizing said facilities.[17]

In summary, the errors made by defendants are: (1) in believing that the members who have been injured must all be named in the complaint; (2) in assuming incorrectly that Jenelle Martinez is not a member and that her wish to access the defendants' place of public accommodation and desire to do so in the future are therefore irrelevant; (3) defendants' incorrect assumption that no members of Citizens Concerned About Disability Access, Inc. other than the Martinez's have been injured with respect to defendant's place of public accommodation.

2.   *Prong 2 – CCADA's Purpose and Interests*

Clearly the *Complaint* satisfies the second Hunt prong, stating that the organization's purpose is to represent its members' interests by assuring that places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities. See, e.g., ¶¶ 18 - 21 of the *Complaint*. Defendant concedes that this prong is pled, but suggests that it is a mere conclusory allegation. It is not a mere conclusory allegation (i.e., where a conclusion has to be drawn from other facts); it is a statement of fact.

---

[17] It is also worth noting that Title III of the ADA does not require the individual to be physically present at place of public accommodation to be entitled to non-discriminatory treatment, and discrimination can occur where plaintiff is not physically present and only has contact with place of public accommodation through his father by telephone and correspondence. Baker v Hartford Life Ins. Co., 12 A.D.D. 70, 6 A.D. Cases 135 (N.D. Ill. 1995). Similarly, that a child's desire to go to a place of public accommodation may be derivative of the child's parent's desire to go to that place with the child in tow does not diminish any responsibility under the ADA with respect to removal of barriers to access. This would be the same as saying that a disabled woman would not have a right under the ADA to access to a place of public accommodation she was interested in going to only because she planned to accompany her non-disabled husband into the premises; i.e., she has no rights unless she subjectively wants to go to the place of public accommodation independent of going with someone else. Under Title III of the ADA, there is no distinction made with respect to why a disabled person seeks access to a particular place of public accommodation.

  3. *Prong 3 – Neither the Claim Asserted Nor the Relief Requested Requires the Participation of Individual Members in the Lawsuit*

Courts applying the third prong of the Hunt test have generally allowed associations standing to seek declaratory or injunctive relief. <u>Lake Lucerne Civic Ass'n, Inc. V. Dolphin Stadium Corp.</u>, 801 F. Supp. 684, 691 (S.D. Fla.1992). The plaintiffs in this case seek only injunctive relief, not monetary damages or any other relief which would be individual in nature. The courts have routinely held that claims for monetary relief necessarily require individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the Hunt test. In contrast, associations do have standing to assert claims on behalf of their members in seeking injunctive relief because the participation of individual members of the plaintiff associations is not required in assessing whether an injunction is appropriate or not. Id. Indeed, the Supreme Court in <u>United Food And Commercial Workers Union Local 751, v. Brown Group, Inc.</u>, 517 U.S. 544, 545 (1996), citing to <u>Warth v. Seldin</u>, 422 U.S. 490 (1975), and <u>Hunt</u>, supra, noted that "individual participation" is not normally necessary when an association seeks prospective or injunctive relief for its members, but indicated that such participation would be required in an action for damages to an association's members, thus suggesting that an association's action for damages running solely to its members would be barred for want of the association's standing to sue. See <u>Hunt</u>, supra, at 343.

The Eleventh Circuit in <u>Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville</u>, 951 F.2d 1217 (11th Cir 1992), has also stated that when, as here, only injunctive relief is sought, a plaintiff can establish standing by showing that he is likely to suffer future injury. Citing, <u>Cone Corp. v. FLA Dept. of Transp.</u>, 921 F.2d 1190, 1203 (11th Cir.), cert. denied, __ U.S. __, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991).

16

## III. CONCLUSION

For the above reasons, plaintiff prays that defendants' motion to dismiss or for a more definitive statement be denied. Alternatively, plaintiffs would urge the Court that, even were defendant's arguments accepted by the Court, the proper disposition would be to permit an opportunity to amend. Schneider v. California Dep't of Corrections, 151 F.3d 1194 (9th Cir. 1998); Schuylkill Energy Resources, Inc. v. Pennysylvania Power & Light Co., 113 F.3d 405 (3rd Cir. 1997). Similarly, where subject matter jurisdiction is challenged in a motion to dismiss, a court should permit a party to amend unless it appears utterly impossible for subject matter jurisdiction to be averred. Leaf v. Supreme Court of Wisconsin, 979 F.2d 589, 595 (7th Cir. 1992), cert. denied, 508 U.S. 941 (1993)(noting that leave to amend defective allegations of subject matter jurisdiction should be freely given).

Respectfully submitted,

_____
Lance J. Wogalter
Lance J. Wogalter, P.A.
Florida Bar No. 932183
3712 W. Hillsboro Blvd.
Deerfield Beach, FL 33442
Tel.   (954) 592-2184
Fax   (954) 725-1303
Counsel for Plaintiffs

### Certificate of Service

I certify that I have this March 31, 2000, served a copy of the foregoing by U.S. Mail upon opposing counsel by mailing a copy, first class postage prepaid, to Curtis R. Cowan, Esq., Holland & Knight LLP, One E. Broward, Blvd., Ste. 1300, PO Box 14070, Ft. Lauderdale, FL 33301.

_____